UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ANDREW ALLEN ZANE,

Petitioner,

v.

ROB MUNDT, Warden,

Respondent.

Civil File No. 02-43 (DSD/ESS)

**REPORT AND RECOMMENDATION**

Andrew Allen Zane, Federal Correctional Institution, Box 1500, Waseca, Mn. 56093-0741, Petitioner, pro se.

Lisa A. Biersay, Esq., 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Mn. 55415, for Respondent.

The above-entitled matter is before the undersigned Magistrate Judge of District Court on the petition of Andrew Allen Zane for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. On January 16, 2002, the undersigned filed an order requiring Respondent Rob Mundt to show cause why the writ should not be granted [Docket No. 5]. On January 23, 2001, Respondent filed a Response, requesting that Petitioner's application for habeas relief be dismissed with prejudice. [Docket No. 8]. On March 14, 2002, Petitioner filed a Reply. [Docket No. 11].

These proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that the petition for writ of habeas corpus be dismissed with prejudice.

## I. BACKGROUND

On March 18, 1991, a judge in the United States District Court for the Central District of California sentenced Petitioner to a term of imprisonment of 180 months for possession with intent

FILED APR 1 0 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) [Docket Nos. 1, 8]. According to the Respondent, Petitioner has a projected release date of November 8, 2002 [Docket No. 8].

The petition arises as a result of a disciplinary proceeding that took place following a December 7, 1998 incident at Nellis Federal Prison Camp in Las Vegas, Nevada, where Petitioner was incarcerated at the time. Petitioner, along with several other inmates, was caught trying to smuggle five bags into the prison facility. According to the Petitioner, another inmate had asked for his help in obtaining the bags, which were to be delivered to the facility at a particular time; the other inmate told the Petitioner that the bags contained food and Petitioner would get some food if he helped. [Docket No. 2]. Petitioner maintains that he had originally declined to help because he had already purchased some food from the commissary. Id. However, at about the time the bags were to be delivered, Petitioner, who was on his way to meet a staff member, happened to run in to this inmate at about the time the food was to be delivered. Id. Again, Petitioner was asked to help and offered some food; Petitioner responded that he had already eaten the food he had previously purchased and was not hungry. Id. Nonetheless, Petitioner reluctantly agreed to help, if needed. Id. Prison officials had been informed that such a delivery was to take place and caught Petitioner and the other inmates in the act. Id. While Petitioner was under the impression that the bags only contained food, prison officials also found 19 capsules of Prevacid, a prescription drug, in the bags. [Docket No. 9, Ex. A].

Petitioner was charged with Possession of Anything Not Authorized and Attempted Introduction of Drugs Not Prescribed by Medical Staff. Id. On December 18, 1998, a disciplinary hearing was held and Petitioner was found to have committed the offense of Attempted Introduction of Drugs Not Prescribed by Medical Staff; the other charge was dismissed as repetitive. [Docket No. 9, Ex. B]. The Discipline Hearing Officer disallowed 30 days of good time

credit as a sanction for the offense; he was also given a suspended disciplinary transfer pending 180 days of clear conduct. Id.

The Petitioner challenges the disciplinary action; he provides four grounds in support of his petition [Docket No. 1]. The first ground is that Petitioner's due process rights were violated when the Bureau of Prisons ignored exculpatory evidence and found him guilty of an offense he did not commit. Id. The second ground alleges a due process violation because Petitioner's attempt to seek an administrative remedy was dismissed as "untimely." Id. The third ground is that the Petitioner's due process and equal protection rights were violated because he was punished more severely than the "actual perpetrators of the charged act." Id. The fourth ground is that the Bureau of Prisons violated Petitioner's due process rights by using erroneous information to deprive him of 30 days of good time credit. Id.

For the reasons discussed below, the Court concludes that Petitioner is not entitled to habeas corpus relief and his petition should be dismissed without prejudice.

## II. DISCUSSION

### A. Petitioner's First Ground

Petitioner states, "I lost 30 days Good Time Credits (Liberty Interest) over an alleged Bureau of Prisons code violation I DID NOT commit. To obtain its finding of guilt, the Bureau (BOP) ignored exculpatory evidence, whereby THE BOP VIOLATED DUE PROCESS GUARANTEES IN THE UNITED STATES CONSTITUTION." [Docket No. 1]. The Court construes this ground as a claim of actual innocence.

The outcome of a disciplinary proceeding is reviewed only to ensure that it was not so lacking in evidentiary support as to violate due process. Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993)(citing Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768,

2775 (1985)). Thus, a decision is proper if it is supported by "some evidence." Id. In fact, disciplinary action can be based solely on the conclusion that a guard's report is credible "even when there is substantial evidence to the contrary." Id.

The outcome was supported by some evidence.[1] The report from the hearing reveals that Petitioner did take part in the incident. [Docket No. 9, Ex. B]. The report says Petitioner "regrets and is sorry to [sic] his action to participate in the incident. Inmate accepts responsibility for what he did." Id. Petitioner then described the incident in more detail. Id. The details in the report are largely consistent with the factual details provided by the Petitioner in his filings. Petitioner admits that he reluctantly participated in the incident. [Docket No. 2]. Though Petitioner may not have known that the bags contained prescription drugs, he went outside with the other inmates, knowing that they were going to retrieve bags that were smuggled into the facility by relatives of one of the inmates. It is irrelevant that petitioner was not hungry; it is irrelevant that Petitioner had eaten earlier in the day; it is irrelevant that the medical staff at the correctional facility prescribe Prevacid to some of the inmates; it is irrelevant that Petitioner originally declined to help retrieve these bags; it is irrelevant that Petitioner never actually touched the bags, a fact that is disputed; and, it is irrelevant that one of the inmate's volunteered to take full responsibility for the incident. What is relevant is that the Petitioner, knowing that the bags were not supposed to be brought into the

---

[1]Petitioner challenges the use of the "some evidence" standard, asserting that the "greater weight of the evidence" standard should be used when there is conflicting evidence. [Docket No. 11]. For this proposition, Petitioner relies on Goff v. Dailey, 991 F.2d 1437, 1441 n. 9 (8th Cir. 1993). However, the Court does not find any conflicting evidence in this case. While Petitioner repeatedly asserts his innocence, he also admits that he participated in the incident in question. Thus, at best, his protests amount to a statement of mitigating factors. It is not clear from Petitioner's argument that the Bureau of Prisons is *required* to consider such mitigating factors; nonetheless, when the disciplinary action was appealed before the Regional Director, he observed that Petitioner's past disciplinary record was considered with respect to Petitioner's sanction. [Docket No. 3, Ex. F]. Consequently, the Court is not persuaded that Goff controls in this case.

facility, helped retrieve them; unfortunately, the bags contained prescription medicine that was not prescribed by the medical staff at the correctional facility.[2] While there may have been some evidence that mitigated his culpability, there was certainly some credible evidence to support the finding that he committed the offense charged.

For these reasons, the Court finds Petitioner's first ground to be without merit.

**B. Petitioner's Second Ground**

Petitioner states, "Upon receiving new and previously unobtainable evidence of his actual innocence, Zane again sought and filed for an Administrative Remedy. The BOP again refused to examine the evidence claiming the filing was 'untimely.' As such, THE BOP AGAIN VIOLATED ZANE'S FUND[A]MENTAL RIGHT TO DUE PROCESS, AND IGNORED ALL STANDARDS SET FORTH UNDER FEDERAL C[R]IMINAL PROCEDURES AND RULES OF EVIDENCE." [Docket No. 1].

With respect to this issue, Petitioner has provided several documents. The hearing was held on December 18, 1998; the Discipline Hearing Officer made his decision on December 22, 1998. [Docket No. 3, Ex. D]. The decision stated that it could be appealed within 20 calendar days of Petitioner's receipt of the decision; Petitioner was given a copy of the decision on January 6, 1999. Id. On February 8, 1999, Petitioner appealed the decision of the hearing officer. [Docket No. 3, Ex. E]. On February 25, 1999, Petitioner's appeal was found to be without merit. [Docket No. 3, Ex. F]. On some date after December 24, 1999, a former inmate of the Petitioner sent him a

---

[2]That is, the 19 pills that were found were not part of any prescription from anyone at the facility.

"Declaration"[3] that supported Petitioner's claims of innocence. [Docket No. 3, Ex. G]. On May 5, 2000, after receiving the new evidence, Petitioner instituted an Administrative Remedy Proceeding. [Docket No. 3, Ex. H]. Petitioner's request for relief was denied as untimely. Id. Between May 13, 2000 and August 11, 2000, Petitioner continued to attempt to appeal the disciplinary action on the ground that new evidence established his innocence; his attempts were repeatedly rebuffed as untimely. [Docket No. 3, Exs. I-Q].

Inmates are required to exhaust their administrative remedies before seeking habeas corpus relief from the judicial system. United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000); Zacher v. Tippy, 202 F.3d 1039 (8th Cir. 2000); Mason v. Ciccone, 531 F.2d 867 (8th Cir. 1976); Willis v. Ciccone, 506 F.2d 1011 (8th Cir. 1976). Relying upon a Third Circuit case, the Respondent argues that Petitioner's failure to exhaust his administrative remedies should result in a procedural default. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 759 (3rd. Cir. 1996).

The Petitioner argues that Moscato is distinguishable because the prisoner in that case did not attempt to start the appeals process anew.

The Court is convinced that Petitioner failed to exhaust his administrative remedies. The evidence submitted by the Petitioner shows that, between February 25, 1999 and May 5, 2000, no administrative relief was sought. Furthermore, Petitioner admits that he "abandoned" the administrative process. [Docket No. 3, Ex. K].

Pursuant to Moscato, the Court concludes that the Petitioner procedurally defaulted on his claim for relief. As stated above, prisoners are required to exhaust their administrative remedies prior to seeking habeas corpus relief. Willis, supra. Furthermore, the Eighth Circuit acknowledged

---

[3] For what it is worth, the Court observes that the Declaration of David Duni does not comply with the requirements of 28 U.S.C. § 1746.

that, "in the prison discipline context, ... swift and sure punishment is often imperative." Hrbek, 12 F.3d at 780. If, as Petitioner suggests, a prisoner can exhaust his administrative remedies simply by beginning the process anew, "swift and sure" punishment will become elusive and the requirement that a prisoner exhaust available administrative remedies will become almost meaningless. This case, which involves a prisoner's attempt to resuscitate an administrative proceeding after over a year of inaction, provides a perfect example of this. The Court finds this case indistinguishable from Moscato[4] and recommends that the Petition be dismissed because of Petitioner's failure to exhaust his administrative remedies.[5]

With regard to Petitioner's reference to the Rules of Criminal Procedure and Evidence, the Court observes that prison disciplinary proceedings are not part of a criminal prosecution and an inmate is not entitled to the full panoply of rights enjoyed by a defendant. See Gonzalez-Perez v. Harper, 241 F.3d 633 (8th Cir. 2001). Accordingly, Petitioner's reliance on such rules is misplaced.

For these reasons, the Court finds Petitioner's third ground to be without merit.

---

[4]Moscato left open the possibility that an inmate could show cause why an administrative remedy was not exhausted, thus preventing a procedural default. In this case, Petitioner argues that he acquired previously unobtainable evidence, potentially raising the argument that he had cause for not completing the process. Upon examining this evidence, the Court is not persuaded either that it was previously unobtainable, or that Petitioner had cause for not exhausting his remedies. The evidence in question is the statement of a former inmate. [Docket No. 3, Ex. G]. Petitioner's claim that the evidence was unobtainable is apparently based upon the inmate's assertion that he did not want to provide a statement while he was still incarcerated. [Docket No. 3, Ex. G, ¶ 2]. The evidence is not "new" or "unobtainable" and does not demonstrate cause for Petitioner's failure to exhaust his remedies. For these reasons, the Court concludes that the "cause" exception recognized by Moscato does not apply here.

[5]Although all of Petitioner's grounds could be denied for failure to exhaust his administrative remedies, the Court will, nonetheless, proceed to a consideration of the remaining grounds put forward in the petition.

### C. Petitioner's Third Ground

Petitioner states, "THE BOP VIOLATED ZANE'S DUE PROCESS AND EQUAL PROTECTION GUARANTEES OF THE UNITED STATES CONSTITUTION WHEN Zane was included in an act that he did not commit, and when he was punished more severely (with the exception of one inmate) than the actual perpetrators of the charged act." [Docket No. 1].

Where, as here, Petitioner does not allege that he is a member of a suspect class, his claims are reviewed under a rational basis standard. Hosna v. Groose, 80 F.3d 298, 304 (8th Cir. 1996). To prevail on his claim, he must prove that persons who are similarly situated have been treated differently by the Government, and that the Government has failed to provide a rational basis for the dissimilar treatment." Id.

The treatment about which Petitioner complains is that he lost 30 days of Good Time Credit for his involvement in this incident.[6] Petitioner alleges unequal treatment because some of the other inmates involved in the incident received less severe punishments or, while receiving greater punishments, were able to serve them at a halfway house, or other nicer location. [Docket No. 11]. The Respondent maintains that Petitioner's sanction was in accordance with disciplinary policy. [Docket No. 8].

Because Petitioner is alleging unequal treatment as compared to four other inmates and not as a member of a suspect class, Hosna dictates that his claims be reviewed under the rational basis standard. The hearing officer provided reasons for the sanction he imposed. He said that the sanction was designed to punish Petitioner and to deter him and others from engaging in similar conduct. [Docket No. 3, Ex. D]. On appeal, the Regional Director observed that the sanction was

[6]Though Petitioner asserts again that he was not involved in this incident, the Court rejects his contention for reasons previously stated.

in accordance with prison policy. [Docket No. 3, Ex. F]. The Regional Director also addressed Petitioner's complaint that other individuals were given smaller sanctions. The Regional Director observed that the other sanctions imposed were also in accordance with policy.[7] [Docket No. 3, Ex. F]. The Regional Director observed that the sanctions imposed upon other inmates is irrelevant to the sanctions imposed on the Petitioner and that the hearing officer has the authority to impose sanctions that he feels will correct misconduct. Id.

The Court concludes that hearing officer presented a rational basis for the sanction imposed, satisfying Hosna. Furthermore, the Court fails to find a an equal protection violation in the different sanctions imposed. First of all, it appears that all of the sanctions imposed were within the limits of prison policy. Secondly, Petitioner acknowledges that some of the prisoners were convicted of lesser violations. [Docket No. 11, Page 14]. Their treatment can not give rise to an equal protection claim. Some prisoners received a greater sanction. Their treatment cannot give rise to an equal protection violation. While it appears that some of the inmates received *different* treatment, the Court cannot conclude that the treatment was *unequal*, or even *unfair*. The severity of an offense, not to mention the length of time remaining on an inmate's sentence, are relevant to the severity of a sanction, especially if, as here, the sanction is meant to have a deterrent effect. For these reasons, particularly the level of review required by Hosna, the Court finds Petitioner's third ground to be without merit.

---

[7]On this point, the Respondent submitted a document for *in camera* review; Respondent addressed these documents in his memorandum. [Docket No. 8, Page 13]. The documents purported to show the discipline records of the other inmates who were involved in this incident. The documents were not filed and copies were not sent to the Petitioner (although a cover letter was sent to the Petitioner). Because Respondent appeared unwilling to make these documents a part of the public record, the Court has returned them *without consideration*.

**D. Petitioner's Fourth Ground**

Petitioner states, "In maintaining erroneous information which had been challenged by Zane at various junctures through attempted Administrative Remedies, and by using said erroneous information to adversely [a]ffect Zane's Custody Level, his programming, and his Release Date and/or Release to Halfway House date, the BOP is VIOLATING ZANE'S RIGHT TO DUE PROCESS, HIS RIGHT TO REDRESS, AND TITLE 5 U.S.C.A. § 552a." [Docket No. 1].

Again, Petitioner alleges that his disciplinary proceeding violated due process. For the reasons already stated, the Court rejects this argument.

The Court also concludes that Petitioner's right to redress has not been violated. The Eighth Circuit has stated that the right to redress "is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).

Finally, Petitioner's claim under 5 U.S.C. § 552a appears to relate to information in his record that the Bureau of Prisons failed to correct after he "challenged" it. However, as Petitioner acknowledges, the remedy for such a violation is damages. See 5 U.S.C. § 552a (g)(1). Because the petition seeks habeas corpus relief, 5 U.S.C. § 552a is irrelevant to Petitioner's claims.

For these reasons, the Court finds Petitioner's fourth ground to be without merit.

**E. Other Grounds**

The Petition contained four grounds for relief. [Docket No. 1]. Having discussed those grounds above, the Court concludes that Petitioner is not entitled to habeas corpus relief. However, in another document, the Petitioner makes an additional argument for relief. The Court will briefly consider it.

Petitioner alleges that his right to call witnesses at his disciplinary hearing was infringed.

[Docket No. 2]. The United States Supreme Court has said that an "inmate facing disciplinary proceedings should be allowed to call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979 (1974). Acknowledging this right, the Eighth Circuit stated, however, that the deference accorded prison officials limits an inmate's right to call witnesses for security reasons. Brown v. Frey, 889 F.2d 159, 167 (8th Cir. 1989). The Eighth Circuit went so far as to say that "the discretion of prison officials is so broad that 'it may be that a constitutional challenge to a disciplinary hearing [based on an inmate's right to call witnesses] ... will rarely, if ever, be successful.'" Id. (quoting Ponte v. Real 471 U.S. 491, 499, 105 S.Ct. 2192, 2197 (1985)). Nonetheless, prison officials may not arbitrarily deny inmate's request to call witnesses at a disciplinary hearing. Turner v. Caspari, 38 F.3d 388 (8th Cir. 1994); Moran v. Farrier, 924 F.2d 134 (8th Cir. 1991); Rodgers v. Thomas, 879 F.2d 380 (8th Cir. 1989); Malek v. Camp, 822 F.2d 812 (8th Cir. 1987).

Petitioner alleges that he was not permitted to call witnesses. However, he provides no evidence to support his claim. The report of the hearing officer indicates that Petitioner did not request witnesses. [Docket No. 3, Ex. D]. The Court can find no evidence to support Petitioner's claim.

## III. RECOMMENDATION

The Petitioner failed to exhaust his administrative remedies. For that reason, the Court should dismiss on the ground that Petitioner has procedurally defaulted on his claim for relief. However, even if the Court proceeds to a consideration of Petitioner's claims on the merits, the Court concludes that Petitioner's claims are meritless. Accordingly, based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**:

1. That Petitioner's application for habeas corpus relief be DENIED. [Docket No. 1].

Dated: April 10, 2002

E. S. SWEARINGEN
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties within ten days, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.